**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JAMES A. VERRET, SR.**<br><br>**VERSUS**<br><br>**DAIGLE TOWING SERVICE, L.L.C.** | **CIVIL ACTION NO: 2:18-cv-01740**<br><br>**DISTRICT JUDGE**<br>**HON. ELDON E. FALLON**<br><br>**MAGISTRATE JUDGE**<br>**HON. MICHAEL NORTH** |

**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORTS AND ANTICIPATED TESTIMONY OF ANDREW STEPHEN NOLTE**

Defendant, Daigle Towing Service, L.L.C. ("Daigle Towing"), respectfully submits this Memorandum in Support of its Motion in Limine to strike the reports and anticipated testimony of plaintiff's marine engineer and naval architect expert, Andrew Stephen Nolte ("Steve" Nolte). (*See* October 5, 2018 Report of Steve Nolte, attached hereto as Exhibit "A "and November 14, 2018 Supplemental Report of Steve Nolte, attached hereto as Exhibit "B").

Mr. Nolte's reports and anticipated testimony will not be helpful to the trier of fact and are not based upon any scientific, technical, or other specialized knowledge as required by Federal Rules of Evidence Rule 702. The issues in this case are not complex and do not require the evaluation of evidence that is outside of the understanding and experience of the average juror. Further, the unfair prejudice, confusing nature, and tendency to mislead the jury presented by Mr. Nolte's reports and anticipated testimony significantly outweigh any probative value under Rule 403. As discussed herein, Mr. Nolte's reports and testimony should be excluded from use at trial.

**FACTUAL BACKGROUND**

Plaintiff, James Verret, alleges that he was injured while employed by Daigle Towing as a temporary relief captain aboard the M/V CAPT CJ, an uninspected towing vessel owned and

operated by Daigle Towing. (Rec. Doc. 1)[1]. Plaintiff claims that he suffered a hematoma injury on his left shin on October 30, 2017 when he allegedly fell while attempting to climb into an upper bunk bed onboard the vessel. (*See* Deposition of James Verret, attached hereto as Exhibit "C" at p.79:18-p. 80:11; p.83:4-18). Specifically, plaintiff claims that he stepped onto the bottom bunk bed and, while using his left hand to hoist his left onto the top bunk, his right foot slipped on the bedding of the bottom bunk, causing him to fall backwards and strike his left shin against the railing of the bottom bunk. *Id*. According to plaintiff, the bunk bed was unsafe for only one reason- it did not have a ladder as a means of access to the top bunk. (*Id*. at p.105:16-18).

Daigle Towing adamantly denies liability in this case because the plaintiff's injury did not occur on the vessel. It is undisputed that plaintiff's incident was not witnessed by any of his fellow crewmembers and that plaintiff did not report his alleged incident while aboard the vessel. (*Id*. at p. 93:15-17; p. 94:11-22). Likewise, it is undisputed that plaintiff continued to work his entire hitch without showing signs of an injury. (*Id*. at p.94:21-p.95:25). Further calling into question the legitimacy of plaintiff's allegations, plaintiff underwent an employment physical at West Jefferson Industrial Medicine, LLC on the day he disembarked the vessel. (*See* West Jefferson Industrial Medicine, LLC records, attached hereto as Exhibit "D"). During the examination plaintiff expressly denied having a leg injury and was cleared to work with no restrictions. (*Id*). Based on the evidence in the record, plaintiff simply cannot prove that his hematoma injury was the result of an onboard trauma to his left leg and not attributable to an incident that occurred at his home, or other location he may have visited after his hitch was over.

In support of his claims, plaintiff has retained the services of Steve Nolte, a marine engineer and naval architect. Because plaintiff has no evidence that supports his claims, other than his own

---

[1] Plaintiff disputes his status as a temporary employee and testified that he believes he was hired as a permanent employee. Plaintiff's status as a temporary or permanent employee is immaterial to this motion.

2

testimony, Mr. Nolte does not (and cannot) offer any expert opinions on the circumstances surrounding plaintiff's alleged incident or explain how the alleged incident occurred as plaintiff claims. Instead, Mr. Nolte assumes plaintiff's testimony as true and, as expected, concludes that plaintiff's alleged incident was the sole result of the "unsafe access to the upper bunk." (Exhibit "A" at Section 7.0).

Mr. Nolte's report states that his conclusions are based upon his reading of plaintiff's deposition testimony, various documents produced in the course of discovery, and the joint vessel survey report of Nicholas Paternostro of Dufour, Laskay, & Strouse, Inc. (*See* Survey Report No. 1746-02N18, attached hereto as Exhibit "E"). Based on his review of these materials, Mr. Nolte sets forth the following three conclusions:

(1) The M/V CAPT CJ did not meet the standards of care and practice for the maritime industry for a vessel, which is a "safe workplace" with safe access and egress, safe walking and working surfaces and a workplace which is free of recognized hazards, at the time of Mr. Verret's incident.

(2) Failed to establish safe working standards for the crew, by not properly identifying hazards, finding solutions to the hazards and implementing corrective actions to known hazards.

(3) Failed to provide Mr. Verret with a vessel with safe access to the upper bunk where he was assigned.

(Exhibit "A" at Section 7.0).

Mr. Nolte's conclusions are exceptionally vague and, as written, could be uniformly applied to any maritime personal injury case involving an upper bunk bed, regardless of the specific facts the case. Confusingly, Mr. Nolte states that his opinions are based on his "knowledge of regulations governing the proper means for providing safe ingress and egress on vessels" while in the same report, Mr. Nolte acknowledges that, because the M/V CAPT CJ is an uninspected towing vessel, "there are no applicable regulations that speak specifically to marine bunks." (*Id*. at Section 8.1 and Section 6.0).

Conceding the fact that the lack of ladder does not violate any specific regulation applicable to the M/V CAPT CJ, Mr. Nolte cites to the generic Occupational Safety and Health Administration ("OSHA") provision, 29 U.S.C. §654, commonly referred to as the "General Duty Clause." (*Id.* at Section 5.3.1) Additionally, Mr. Nolte cites to the ASTM 1244 Standard Specifications for Marine Berths, which he admits do not apply to the CAPT CJ and which does not contain any language relating to what constitutes a "proper means of access" into/out of an upper bunk bed onboard any type vessel, much less an uninspected towing vessel. (*Id* at Section 6.1; *See also* ASTM 1244, attached hereto as Exhibit "F").

Notably, Mr. Nolte does use any of the measurements contained in the Vessel Survey Report to articulate how, or why, the subject bunk is unsafe under either the General Duty Clause or the ATSM 1244. Instead, in his supplemental report, Mr. Nolte simply notes that the upper bunk is approximately 57.5 inches (less than 5 feet) above the deck and, without any further reasoning, sweepingly concludes that Daigle Towing failed to provide the plaintiff with a safe workplace. (Exhibit "B" at Section 2.0).

The bunk beds on the M/V CAPT CJ do not violate a single rule or regulation. The issue of whether the plaintiff's bunk bed was unsafe because it did not have a ladder is an issue for the jury, whose members can decide this issue using their common knowledge and experiences and without the need for Mr. Nolte's expertise. Even a cursory review of Mr. Nolte's reports reveals that his opinions are nothing more an attempt to substitute his judgment for that of the jury. For these reasons, and those noted herein, Mr. Nolte's report and anticipated testimony should be excluded from trial.

## **LAW AND ARGUMENT**

Under Rule 702 of the Federal Rules of Evidence, a witness who is qualified as an expert by knowledge, skill, expertise, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 is in effect a codification of the United States Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L Ed. 2d 238 (1999). In *Daubert*, the Supreme Court held that trial courts should serve as "gatekeepers" for expert testimony, admitting only that testimony that is both "reliable" and "relevant." *Id.* at 589. As the gatekeeper of scientific evidence, the Court has an obligation to ensure that any and all expert testimony meets these standards. *Daubert*, 509 U.S. at 596.

The Supreme Court provided five considerations to assist a trial judge in determining "reliability" of the expert's testimony: (1) the testability of the expert's theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards and controls; and (5) whether the methodology is generally accepted in the scientific community. *Daubert*, 509 U.S. at 591-95. The court must determine that the reasoning and methodology underlying the testimony is scientifically valid and that the reasoning and methodology can properly be applied to the facts in issue. *Id.* at 589.

In satisfying its "gatekeeper" duty, the Court will look at the qualifications of the experts and the methodology used in reaching their opinions and will not attempt to determine the accuracy

of the conclusion reached by the expert. *Dean v. Sea Supply, Inc.*, No. CV 16-14254, 2017 WL 3773149, at *3 (E.D. La. July 13, 2017). When expert testimony is demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 279 (5th Cir. 1998). Moreover, expert testimony that simply mirrors that of a fact witness should be excluded. *In re Tasch, Inc.*, 1999 WL 596261, p. *2 (E.D. La. 1999). Testimony that is "no more than [the plaintiff]'s testimony dressed up and sanctioned as the opinion of an expert is inappropriate expert testimony." *Viterbo v Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

Thus, when an expert's "testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). "Reliability" means more than mere subjective belief and unsupported speculation. *Johnson v. Arkema*, Inc., 685 F.3d 452, 459 (5th Cir. 2012). Therefore, conjecture, hypothesis, subjective belief, and unsupported speculation are impermissible bases for expert opinion and must be discarded. *Daubert,* 509 U.S. at 590. The burden is on the party offering the expert opinion to show by a preponderance of the evidence that the expert's testimony satisfies Rule 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

### 1. Mr. Nolte's opinions will not assist the trier of fact.

The Federal Rules only allow for the use of experts if the criteria of Federal Rule of Evidence 702 are met. If the evidence and facts of a particular case are such that a lay person can understand them without "expert" assistance, then the use of expert testimony is not only unnecessary and unhelpful, it is actually invasive of "the domain of common-sense matters upon

which jurors require no expert assistance." *Thomas v. Glob. Explorer*, 2003 U.S. Dist. LEXIS 3365, at *5-6 (E.D. La. Feb. 28, 2003). One-sided recitations of disputed facts from an expert are not helpful to a jury and should be excluded. *Roy v. Florida Marine Transporters, Inc.*, 2004 WL 551208 (E.D. La 2004). In evaluating the admissibility of the proposed testimony of Mr. Nolte, the Court should focus on the reliability of Mr. Nolte's opinion and whether his opinion will assist the trier of fact to understand the evidence, which it does not.

Expert testimony is only useful when it serves to educate the fact finder on affairs not within the understanding of the average person. Fed. R. Evid. 702; *See also Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993)). The Fifth Circuit has consistently held that expert testimony should be excluded if the Court finds that the fact finder could adeptly assess the situation using only their common experience and knowledge. *See Peters v. Five Star Marine Service,* 898 F.2d 448, 452 (5th Cir. 1990). Further, maritime "safety experts" are regularly excluded in marine personal injury cases on the basis that their testimony would not aid the trier of fact. *See, e.g., Bouton v. Kim Susan Inc.*, 1997 U.S. Dist. LEXIS 1654, *6 (E.D. La. Feb. 6, 1997) (excluding expert testimony as to whether employer provided a clean, safe workplace and whether employer violated federal regulations and safety manual requirements when plaintiff fell while unloading pipe); *Matherne v. MISR Shipping Co.*, 1991 U.S. Dist. LEXIS 7723, *1 (E.D. La. May 31, 1991) (excluding expert testimony regarding conditions of vessel and safety of ingress and egress when plaintiff fell down vessel steps which allegedly moved);

Judge McNamara of the Eastern District described the growing "cottage industry of 'expert' testimony that has been spawned as a parasitic industry of the litigation practice." *Williams*

7

*v. Eckstein Marine Servs., Inc.*, 1992 U.S. Dist. LEXIS 18789, at *1 (E.D. La. Dec. 9, 1992). Judge McNamara went on to describe the standard fare of this "cottage industry" as follows:

> The testimony of an "expert" is tendered, who is an individual who happens to have some title, normally describing himself as a "consultant." A review of their "expert" reports normally reveals that the reports consists of their appreciation of the facts (some of which are usually in dispute), their conclusions as to what the law is or ought to be, as far as fixing responsibility for the accident, and for sure, a reservation at the end of the report to change their opinion if they learn more information."

*Id.*

Here, Mr. Nolte's opinions serve no real purpose in this litigation. The issue in this case is whether plaintiff's incident occurred on the vessel, and if so, whether Daigle Towing's failure to provide a ladder as a means of access to a top bunk bed constituted an unreasonable hazard. It is up to the jury to evaluate the evidence in the record and determine whether the plaintiff can prove that his injury took place onboard the vessel. Thus, if the jury concludes that plaintiff's injury did, in fact, occur on the vessel, it must decide whether the lack of ladder on the vessel's bunk bed constitutes negligence on the part of Daigle Towing. Likewise, it is up to the jury to determine the reasonableness of plaintiff's actions in climbing into the bunk bed. In this regard, Mr. Nolte's opinion will be of no assistance to the jury.

Mr. Nolte's opinions are merely self-serving restatements of plaintiff's allegations and arguments masked as an "expert opinion." His reports are a regurgitation of plaintiff's litigation position, not an application of Mr. Nolte's maritime experience. This is because no maritime experience or expertise of any kind is needed to determine the issues at hand.

As indicated by the parties' joint vessel survey report, the top bunk is located 57.5 inches (less than 5 feet) above the deck. Mr. Nolte does not articulate an opinion as to how 57.5 inches is an unsafe height for a seaman to access his bunk without the use of a ladder. Instead, Mr. Nolte

simply declares that because the bed is 57.5 inches from the deck and there is no ladder, the bunk is unsafe.

Because he is unable to cite to any specific regulations governing marine bunks onboard uninspected towing vessels in support of his opinions, Mr. Nolte relies entirely on the OSHA General Duty Clause.

The OSHA General Duty Clause provides:

a) Each employer:

(1) Shall furnish employment to each of his employees and a place of employment which are free from recognized hazards that are likely to cause death or serious physical harm to his employees.

(2) Shall comply with occupational safety and health standards promulgated under this act.

b) Each employee shall comply with occupational safety and health standards and all rules, regulations and orders pursuant to this chapter which are applicable to his own actions and conduct.

29 USCS §654.

This regulation is not geared towards any specific situation and provides no specialized instructions or requirements. Rather, it generically applies to any and all workplace incidents and does nothing more than memorialize the commonsense notion that an employer is required to provide his or her employees with a safe place to work.

Mr. Nolte's opinions that Daigle Towing violated this General Duty Clause are not helpful and are a perfect example of an expert opinion that "intrude[s] upon the domain of common sense matters upon which the jurors require no expert assistance." *Thomas v. Glob. Explorer*, 2003 U.S. Dist. LEXIS 3365, at *5-6 (E.D. La. Feb. 28, 2003); *See also Simpson v. Betteroads Asphalt Corp.*, No. 11-056, 2013 WL 2255472, at *3 (D.V.I. May 18, 2013) ("Merely citing OSHA definitions…does not provide any analysis involving 'scientific, technical, or other specialized

knowledge' that would 'help the trier of fact to understand the evidence or to determine a fact in issue.').

At trial, the jury will hear witness testimony, review exhibits, and, using its members' common experience and knowledge, will decide whether the absence of a ladder on the bunk created an unsafe workplace. The jury does not need Mr. Nolte's expert knowledge to make its decision. Therefore, Mr. Nolte's reports and anticipated testimony should be excluded from trial because it does not assist the trier of fact.

### 2. Mr. Nolte's opinions are based on an incorrect and misleading interpretation of the ASTM 1244 regulation that will confuse the jury.

Mr. Nolte's interruption of the ASTM 1244, Standard Specifications for Marine Berths is incorrect, misleading, and will confuse the jury. Mr. Nolte does not directly admit that the ATSM 1244 is inapplicable to uninspected towing vessels such as the M/V CAPT CJ. Instead, Mr. Nolte cites the ASTM 1244 Marine Bunk standard, describing it as a "commonly used standard in the marine industry for bunks." (Exhibit "A" at Section 6.1). Without citing to any language of the specifications, Mr. Nolte takes a drawing of a "Type III Marine Berth" and inserts it into the body of his report. (*Id.*). Mr. Nolte then uses the fact that the drawing depicts a ladder between the bottom and top bunk as authority for his position that bunk beds without ladders do not provide "proper access." (*Id.*).

The drawing used in Mr. Nolte's report can be found on page 3 of the ASTM 1244 standard. (*See* Exhibit "F" at p. 3). Located beneath the drawing is a Table, setting forth various dimensions for Type III Berths. *Id*. While the Table includes measurements for the dimensions of various bunk features, such as length, width, lee rails, drawer section heights, and overhead clearances, no designated measurement for the ladder is provided. This is because, despite Mr. Nolte's heavy implications to the contrary, the ASTM 1244 does not actually address "means of access" to marine

bunks. (*Id*.). There is no language in the ASTM 1244 that provides for what would (or would not) constitute "safe access" into a bunk. In fact, the terms "access," and "ladder," are not found anywhere in the text of the ASTM 1244. (*Id.*) Mr. Nolte essentially takes the drawing, inserts it into his report with almost no context, and leads the reader to believe that the depicted ladder is specifically addressed in the standard itself. This is incredibly misleading. Likewise, Mr. Nolte's opinions relating to the ASTM standard are highly prejudicial to Daigle Towing as they could lead a juror to conclude that, because a ladder appears to be part of the ASTM standard and there was no ladder on the bunk at issue in this case, Daigle Towing was not in compliance with this ASTM standard, despite the fact that the standard is inapplicable to the CAPT CJ and does not actually require a ladder. As such, Mr. Nolte should be barred from offering testimony regarding the ASTM 1244 standard and any mention of the standard in his report should be excluded.

## CONCLUSION

Mr. Nolte's opinions are misleading and confusing. More importantly, this case is not complex. The jury is more than capable of weighing the evidence and determining the issues in this case without Mr. Nolte's assistance. Accordingly, Daigle Towing respectfully requests that the Court exclude Mr. Nolte's reports and opinion from evidence at the trial on this matter.

Respectfully submitted:

*/s/Constance C. Waguespack*
Robert R. Johnston (#22442)
Michael H. Rodrigue (#31306)
Constance C. Waguespack (#36416)
**PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Attorneys for defendant,
**Daigle Towing Service, L.L.C.**

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 20th day of November, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to those who are on the list to receive e-mail notices for this case, have enrolled in this Court's CM/ECF program and otherwise consented to receive notice and service via CM/ECF.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

*/s/Constance C. Waguespack*